# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * *
| | | |
|---|---|---|
| LAURIE BISHARA, | * | |
| | * | No. 19-115V |
| Petitioner, | * | Special Master Christian J. Moran |
| | * | |
| v. | * | Filed: February 28, 2023 |
| | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | Redaction |
| | * | |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * *

Edward Kraus, Kraus Law Group, LLC, Chicago, IL, for petitioner;
Voris Edward Johnson, United States Dep't of Justice, Washington, D.C., for respondent.

## ORDER DENYING MOTION FOR REDACTION[1]

Laurie Bishara alleged that the tetanus-diphtheria-acellular-pertussis (Tdap) vaccine caused her to suffer scleroderma. Pet., Jan. 22, 2019. A decision, issued on January 27, 2023, determined that she was not entitled to compensation. Pursuant to 42 U.S.C. § 300aa–12(d)(4) and Vaccine Rule 18(b), she filed a motion requesting redaction of her name and medical information contained in the decision. For the reasons explained below, the motion is DENIED.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this order on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

**Public Access to Information about Petitioners in the Vaccine Program**

The history of public access to information contained in court decisions and the history of the creation of the Vaccine Program[2] provide a context for Ms. Bishara's motion to redact. Both histories suggest that redaction of a litigant's name is available in relatively limited circumstances.

In American jurisprudence, the public can generally access court documents. Nixon v. Warner Comm. Inc., 435 U.S. 589, 597 (1978). As part of this country's inherited traditions, Congress may be presumed to know this principle.

In the mid-1980s, Congress investigated vaccines because of concerns about their safety and to stabilize the market for manufacturers. Bruesewitz v. Wyeth, LLC., 562 U.S. 223, 226 (2011). In the 99th Congress, competing proposals were introduced. See Figueroa v. Sec'y of Health & Human Servs., 715 F.3d 1314, 1323 (Fed. Cir. 2013), Vijil v. Sec'y of Health & Human Servs., No. 91-1132V, 1993 WL 177007, at *4-5 (Fed. Cl. Spec. Mstr. May 7, 1993).

One of these proposals, which was introduced on April 2, 1985, was Senate Bill 827. S. 827 would have created a compensation program located in the District Court for the District of Columbia in which special masters would preside. S. 827, 99th Cong., § 2104(b), § 2104(d)(1) (1st Sess. 1985). In addition to a compensation program, S. 827 contained provisions to improve the safety of vaccines. However, the first session of the 99th Congress adjourned without acting on any of the proposed legislation.

In the second session of the 99th Congress, the House and Senate considered different bills. The version of S. 827 from September 24, 1986 proposed to improve the safety of vaccines. S. 827, 99th Cong. (2d Sess. 1986). It appears that S. 827 did not include a compensation program.

However, the legislation that Congress eventually enacted did contain a compensation program. Congress placed adjudication of vaccine compensation program claims in the district courts. Pub. L. 99-660 § 2112(a). In this legislation, provisions related to discovery and disclosure of information were combined in one section. Id. at § 2112(c), codified at 42 U.S.C. § 300aa–12(c)(2) (1988).

---

[2] For information about the legislation that created the Vaccine Program, this order draws upon a summary provided in Lainie Rutkow et al., Balancing Consumer and Industry Interests in Public Health: The National Vaccine Injury Compensation Program and Its Influence During the Last Two Decades, 111 Penn St. L. Rev. 681 (2007).

Congress's selection of district courts with their tradition of openness to the public suggests that Congress intended for the normal rules about access to judicial decisions to apply. Castagna v. Sec'y of Health & Human Servs., No. 99-411V, 2011 WL 4348135, at *1 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

In 1987, Congress simultaneously funded the Vaccine Program and amended the Vaccine Act. The 1987 amendments did not vary the disclosure provisions. However, in 1987, amendments changed the venue for filing claims from the district courts to the Claims Court. Pub. L. 100-203 § 4307(1); see also Milik v. Sec'y of Health & Human Servs., 822 F.3d 1367, 1375 (Fed. Cir. 2016); Stotts v. Sec'y of Health & Human Servs., 23 Cl. Ct. 352, 358 n.7 (1991).

The Vaccine Program became effective on October 1, 1988. Pub. L. 100-203 § 4302. As initially conceived, special masters were issuing reports, subject to de novo review by judges of the Claims Court. See 42 U.S.C. § 300aa–12(d) (1988). In this context, reports from special masters and decisions from Claims Court judges started to become available to the public. E.g., Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751 (1989) (reproducing special master's report); Philpott v. Sec'y of Health & Human Servs., No. 88-20V, 1989 WL 250073 (Cl. Ct. Spec. Mstr. Aug. 4, 1989).

Congress found that the parties were too litigious in the early years of the Program. H.R. Rep. No. 101-386, at 512 (1989) (Conf. Rep.), reprinted in 1989 U.S.C.C.A.N. 3018, 3115. Congress amended the Vaccine Program in 1989, giving special masters the authority to issue decisions, which could be subject to a motion for review. Pub. L. 101-239 § 6601(h), codified at 42 U.S.C. § 300aa–12(d) and (e).

Congress also added a provision allowing limited redaction of decisions of special masters. Pub. L. 101-239 § 6601(g)(2). The reason Congress added this provision is not clear. See Anderson v. Sec'y of Health & Human Servs., No. 08-396V, 2014 WL 3294656, at *2 n.7 (Fed. Cl. Spec. Mstr. June 4, 2014).

Although Congress authorized redaction of decisions, few litigants requested redaction for many years. Special masters tended to allow redaction without much analysis. After a surge in requests for redaction, the then-Chief Special Master issued an order generally narrowing redaction. Langland v. Sec'y of Health & Human Servs., No. 07-36V, 2011 WL 802695 (Fed. Cl. Spec. Mstr. Feb. 3, 2011). On a motion for review, the Court of Federal Claims endorsed the special master's analysis regarding redaction in a brief footnote. 109 Fed. Cl. 421, 424 n.1 (2013).

The Court of Federal Claims analyzed the special masters' position regarding redaction more extensively in W.C. v. Sec'y of Health & Human Servs., 100 Fed. Cl. 440, 456-61 (2011), aff'd on nonrelevant grounds, 704 F.3d 1352 (Fed. Cir. 2013). W.C. disagreed with the approach taken and asserted that the Freedom of Information Act ("FOIA") was a basis for evaluating redaction requests.

Shortly after W.C., the then-Chief Special Master issued another order regarding redaction. Castagna explored the topic in more depth and, again, found redaction was limited to narrow circumstances. 2011 WL 4348135.

After those orders were issued, the Court of Federal Claims has found special masters were not arbitrary and capricious in either denying redaction, or permitting redaction. Spahn v. Sec'y of Health & Human Servs., 133 Fed. Cl. 588, 604 (2017) (stating that the decision to redact is a question of law and holding that redaction of "the names of petitioner . . . and petitioner's treating physicians . . . are not the kind of medical, or confidential, or privileged, financial information that the Vaccine Act requires to be withheld from public view"); Lamare v. Sec'y of Health & Human Servs., 123 Fed. Cl. 497 (2015); R. K. v. Sec'y of Health & Human Servs., 125 Fed. Cl. 276 (2016); see also Tarsell v. United States, 133 Fed. Cl. 805 (2017) (denying petitioner's request to redact the names of all medical providers from the Court's Opinion and Order).[3]

Against this background, Ms. Bishara filed her motion to redact.

### Procedural History Leading to the Motion to Redact

Ms. Bishara alleged that the Tdap vaccination caused her to suffer scleroderma. Pet., filed Jan. 22, 2019. Once the Secretary has received a petition, the Secretary "shall publish notice of such petition in the Federal Register." 42 U.S.C. § 300aa–12(b)(2). In this instant action, for Ms. Bishara, the Secretary did so on February 21, 2019. National Vaccine Injury Compensation Program; List of Petitions Received, 84 Fed. Reg. 5453-02, 5455 (Feb. 21, 2019).

The remainder of the procedural history is relatively uneventful. The parties obtained reports from experts and the case proceeded to a hearing on November

---

[3] Although the caption to the order in Tarsell identifies the "United States" as the respondent, the "Secretary of Health and Human Services" is the respondent in Vaccine Program cases. 42 U.S.C. § 300aa–12(b)(1).

17-18, 2022. After the hearing, Ms. Bishara was found not entitled to compensation. Decision, issued Jan. 27, 2023.

Subsequently, on February 13, 2023, Ms. Bishara filed a motion to redact the Decision, requesting that her name be reduced to initials.

The Decision has not been made available to the public. The public's access depends upon the outcome of Ms. Bishara's February 13, 2023 motion to redact. Ms. Bishara's motion to redact requested that her name be reduced to initials. Her motion was approximately four pages and was not accompanied by any evidence such as an affidavit. Ms. Bishara argued that the release of her name and illness may interfere with her employment.

The Secretary filed a response. After reviewing the legal basis for any motion for redaction, including Langland and W.C., the government refrained from taking any position. Resp't's Resp., filed Feb. 15, 2023. With that submission, Ms. Bishara's motion for redaction is ready for adjudication.

## Standards for Adjudication

For all issues, including evaluating a motion for redaction, the special master's duty "is to apply the law." Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1280 (Fed Cir. 2005). With respect to issues of public access to judicial decisions, the preferences of the parties are not binding. Reidell v. United States, 47 Fed. Cl. 209 (2000) (declining to vacate underlying decision as parties requested in settling the case). The Seventh Circuit (Posner, J.) has emphasized the need for trial courts to make their own assessment of requests to proceed anonymously and not to defer to the parties:

> [W]e would be remiss if we failed to point out that the privilege of suing or defending under a fictitious name should not be granted automatically even if the opposing party does not object. The use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts.

Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 872 (7th Cir. 1997).

For redaction, the starting point is the Vaccine Act. Congress provided:

5

> a decision of a special master or the court in a proceeding shall be disclosed, except that if the decision is to include information –
>
> (i) which is trade secret or commercial or financial information which is privileged and confidential, or
>
> (ii) which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy,
>
> and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

42 U.S.C. § 300aa–12(d)(4)(B). As previously mentioned, Congress added this provision to the Vaccine Act as part of the 1989 amendments. Pub. L. 101-239 § 6601(g)(2). In the ensuing 30 years, the Federal Circuit has not had an occasion to interpret this statutory provision. Furthermore, the associated Vaccine Rule, Vaccine Rule 18(b), simply mirrors the statute. Thus, there is an absence of binding authority about the meaning of the Vaccine Act's disclosure provision.

## Analysis

In her motion, Ms. Bishara maintains that redaction is appropriate because the information contained in the January 27, 2023 Decision might interfere with future employment in that a potential future employer might "unfairly question both her health and professional abilities." Pet'r's Mot. at 3. However, this argument is not persuasive.

In federal courts, parties must identify themselves. Fed. R. Civ. Proc. 17(a). In the Court of Federal Claims, the requirement is the same. U.S. Ct. Fed. Cl., R. 17. Nevertheless, parties in the federal courts may seek to proceed anonymously.

In evaluating whether certain Native Americans could present an amended complaint with some plaintiffs listed as "Does," the Court of Federal Claims borrowed from a Ninth Circuit case, Does I Thru XXII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000). Wolfchild v. United States, 62 Fed. Cl. 521,

553 (2004).[4] The Ninth Circuit's test from Advanced Textile is just one of multiple formulations of factors trial courts should consider in evaluating a request to proceed anonymously. For other examples, see Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992); K.W. v. Hotlzapple, 299 F.R.D. 438, 441 (M.D. Pa. 2014); Nat'l Ass'n of Waterfront Employers v. Chao, 587 F. Supp. 2d 90, 99 (D.D.C. 2008). While the precise wording might vary, the tests generally consider several factors including "the party's need for anonymity against the general presumption that parties' identities be available to the public and the likelihood of prejudice to the opposing party." Wolfchild, 62 Fed. Cl. at 553-54. These factors are analyzed in reverse order.

*Likelihood of prejudice to opposing party*. The Secretary knows the identity of Ms. Bishara. Redacting this name to initials to prevent members of the public from learning this information would not harm the Secretary.

*Public interest in availability of decisions by judicial officers*. The right of the public to learn about decisions made by members of the judicial branch of their government is based, in part, on the right "to know who is using court facilities and procedures funded by public taxes." Doe v. Village of Deerfield, 819 F.3d 372, 377 (7th Cir. 2016); accord Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189 (2d Cir. 2008).

Here, information about "who is using court facilities" is available to the public because the Secretary has disclosed some information in the Federal Register. The notice in the Federal Register provides the petitioner's name and the docket number. 84 Fed. Reg., at 5455.

Consequently, the Vaccine Act's requirement to disclose in the Federal Register actually supports a limited redaction. Because the public still knows (or can learn) who is using the publicly funded court system, redaction of names to initials is not completely contrary to the presumption of public access to decisions of judicial officers.

*Party's Need for Anonymity*. Ms. Bishara's request for a redaction of her name to initials is based on potential complications in job searching. The potential for adverse employment decisions seems speculative and underdeveloped.

---

[4] Although Wolfchild cited Advanced Textiles favorably, W.C. stated that the Ninth Circuit's criteria can be "draconian." W.C., 100 Fed. Cl. at 459 n.21.

7

Ms. Bishara's motion for redaction is premised on the hope that potential future employers will not learn that she claimed a vaccine harmed her. However, the public, including potential employers, can already obtain that information by searching in the publicly accessible Federal Register. See 84 Fed. Reg., at 5455.

Moreover, Ms. Bishara's current employer appears to be aware that she has some health problems as she has taken medical leave from her job. Tr. at 55. Ms. Bishara did not assert that her use of leave has complicated her current employment.

*Assessment*. Overall, the factors balance against redacting Ms. Bishara's name to initials. As discussed above, the long-standing tradition of public access to decisions of judicial officers weighs against allowing adults to redact their names. If speculative concerns about adverse employment actions were sufficient by themselves to justify redaction, then redaction would become the norm as most substantive decisions contain the petitioner's name. See 42 U.S.C. § 300aa–12(d)(3)(A)(i) (obligating special masters to issue decisions that "include findings of fact").

## Conclusion

Ms. Bishara's February 13, 2023 motion for redaction of the January 27, 2023 Decision is DENIED. Furthermore, this order, too, will become available to the public after the time for the parties to propose redactions has passed.

**IT IS SO ORDERED**.

           s/Christian J. Moran
           Christian J. Moran
           Special Master